UNITED STATES of America,

v.

Domingo CARRION–BRITO, aka Jose Miguel Casas Velilla, Appellant.

No. 08–1562.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 26, 2010.

Filed: Jan. 27, 2010.

Christy H. Fawcett, Esq., Office of United States Attorney, Harrisburg, PA, for United States of America.

Domingo Carrion–Brito, Glenville, WV, pro se.

Before: RENDELL and JORDAN, Circuit Judges, and PADOVA,* Senior District Judge.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Domingo Carrion–Brito appeals from a February 15, 2008 judgment of the United

* Honorable John R. Padova, United States District Court Senior Judge for the Eastern District of Pennsylvania, sitting by designation.

States District Court for the Middle District of Pennsylvania sentencing him to 256 months imprisonment and requiring him to pay a $3,000.00 fine. For the following reasons, we will affirm.

## I. Background

On October 18, 2006, Carrion–Brito was indicted with three co-defendants for conspiracy to distribute heroin and for possession of heroin with the intent to distribute. Carrion–Brito was subsequently charged in a superseding information with one count of conspiracy to manufacture, distribute, and possess with the intent to manufacture and distribute heroin, in violation of 21 U.S.C. § 846. He also faced a criminal forfeiture count. The superseding information was based on his purchase of kilogram quantities of heroin and preparation and sale of smaller quantities of heroin for distribution. He was further charged in a separate indictment with making false statements in a passport application, in violation of 18 U.S.C. § 154, and with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).[1] On August 31, 2007, Carrion–Brito pled guilty to both counts of the superseding information and both counts of the indictment.

A pre-sentence report ("PSR") was prepared and, after several objections, a second revised PSR was submitted to the Court on February 4, 2008.[2] The PSR determined that, pursuant to the 2007 version of the Guidelines, Carrion–Brito's offense level was 43 and, based on his criminal history, he should be sentenced as a career offender. The PSR also indicated that Carrion–Brito has no assets, debts, income, or living expenses and that, "although [he] may not be able to pay a fine immediately, it is believed that through the Inmate Financial Responsibility Program, he can pay a fine below the guideline range in installments."[3] (PSR at 15, ¶ 70.)

On February 15, 2008, the Court held a sentencing hearing. The government and Carrion–Brito informed the Court that they had reached an agreement concerning remaining objections to the PSR. Pursuant to that agreement, Carrion–Brito's total offense level would be 34 and his criminal history category would be IV, resulting in a Guidelines range of 210 to 262 months on count one of the superseding information, to be followed by a mandatory consecutive two-year sentence on count two of the indictment. The parties also stipulated that the amount of heroin involved in Carrion–Brito's case was one to three kilograms.

The Court reluctantly accepted the parties' joint agreement, making clear that it had been inclined to agree with the probation officer's initial calculation under the Guidelines. At Carrion–Brito's request, defense counsel brought to the Court's attention that, in connection with Carrion–Brito's cooperation with law enforcement, "[a] police officer had ... led [Carrion–Brito] to believe that he could expect to receive the same or a similar sentence as his co-defendants."[4] (App. at 94a.) Car-

1. The indictment was filed in the United States District Court for the Eastern District of Pennsylvania, but was transferred to the Middle District of Pennsylvania pursuant to Federal Rule of Criminal Procedure 20.

2. For simplicity, all references to the PSR will refer to the second revised PSR.

3. The Guidelines fine range was $25,000 to $1,000,000.

4. Co-defendants Luis Castro–Castillo and Fernando Lois were charged in separate superseding informations with the same crimes with which Carrion–Brito was charged in his superseding information. They both pled guilty. In both co-defendants' cases, the amount of heroin involved was 60 to 80 grams, in comparison to the kilogram quantities involved in the present case. Additionally, at the plea hearings for Castro–Castillo

rion–Brito apparently felt misled and hoped that the Court would consider that perceived injustice in sentencing him, despite the fact that counsel had explained to him that no law enforcement officer could tell a defendant what sentence he would receive.

The Court then personally addressed the defendant, stating "Mr. Carrion–Brito, you have a right to speak in your own behalf, and the decision is entirely yours. You can tell me anything you want to say about what you think the proper sentence in this case would be." (App. at 99a.) Carrion–Brito, addressing the Court, accepted responsibility for his actions and then reiterated defense counsel's statements concerning the police officer's alleged misrepresentation regarding the sentence to be imposed. The Court, clearly concerned with Carrion–Brito's rights, told Carrion–Brito that if he was claiming that his plea was based on misleading information he could withdraw it. The Court also ensured that he had pled guilty with the understanding that the Court could impose upon him any lawful sentence regardless of what he might have been told by the police officer. Carrion–Brito responded that he did not wish to withdraw his plea but that he simply wanted to make the Court aware of what had happened.

The Court then asked Carrion–Brito, "[i]s there anything you want to tell me about yourself that I should know in deciding your sentence? If you would prefer to speak in Spanish, Professor Diaz will translate for you." (App. at 103a.) Defense counsel, responded, asking the Court to consider a letter. The Court agreed to read the letter [5] and then asked, "[a]nything else for the defendant?" Defense counsel responded in the negative.

At that point, the government moved for a downward departure on account of Carrion–Brito's cooperation. The Court granted the motion and departed downward by 30 months, bringing the Guidelines range to 180 to 232 months followed by a mandatory 24–month sentence on count two of the indictment. Carrion–Brito argued that he should be sentenced at the bottom end of that range.

After considering the factors enumerated in 18 U.S.C. § 3553(a), the Court sentenced Carrion–Brito to a total of 256 months imprisonment comprised of 232 months imprisonment on count one of the superseding information, 120 months imprisonment on count one of the indictment to run concurrently, and a consecutive term of 24 months on count two of the indictment. The Court concluded that Carrion–Brito should be sentenced at the top of the Guidelines range because, first, he had previously received the benefit of leniency when he was sentenced by a different judge for a different offense but then, within less than a year of his release, was arrested again in this case; second, based on his criminal history, he is a "classic career offender"; and third, he benefitted significantly from the plea bargain. Additionally, the Court found "that the

---

and Lois, the prosecutor identified Carrion–Brito as the head of the operation. The Court sentenced Castro–Castillo to 30 months imprisonment, the bottom end of his Guidelines range, taking into account his "somewhat limited involvement [in the offense], his obvious drug addiction, his family history, and his lack of prior criminal involvement." (App. at 181a–82a.) The Court sentenced Lois to 34 months imprisonment, the middle of his Guidelines range, taking into account his lack of a significant prior criminal history, among other things. Ariel Valeria–Urena, the third co-defendant, was a fugitive as of the date the PSR was filed.

**5.** The letter is not part of the record on appeal.

defendant has the ability to pay a fine below the guideline range" and ordered Carrion–Brito to pay a $3,000 fine on count one of the superseding information. Judgment was entered, and Carrion–Brito timely appealed.

## II. Discussion[6]

Carrion–Brito raises two issues on appeal. First, he argues that the District Court erred by denying him the full extent of his right of allocution and that he is therefore entitled to resentencing. Second, he argues that the District Court erred by failing to make specific findings concerning his ability to pay a below-Guidelines fine.

We review for plain error because Carrion–Brito did not advance those arguments before the District Court. *See United States v. Adams*, 252 F.3d 276, 285–86 (3d Cir.2001); *United States v. Torres*, 209 F.3d 308, 313 (3d Cir.2000). In order to establish plain error, a defendant must show "(1) there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." *United States v. Corso*, 549 F.3d 921, 928 (3d Cir.2008). Even if those three criteria are met, a defendant still must establish that our failure to correct the error would result in a miscarriage of justice, that is, the error seriously affected "the fairness, integrity or public reputation

of judicial proceedings." *Id.* at 929 (internal quotations omitted).

### A. *The District Court Did Not Deny Carrion–Brito His Right to Allocute*

■ Carrion–Brito asserts that he is entitled to resentencing because the District Court only partially allowed him to allocute. Specifically, he claims that, even though he had the opportunity to speak to the Court concerning his sentence, his "right of allocution was partly denied ... when trial counsel answered a follow-up question by the district court, which attempted to elicit further allocution from the defendant." (Appellant's Op. Br. at 20–21.) According to Carrion–Brito, the Court should have "insist[ed] that the defendant personally answer the question the court had asked him." (*Id.* at 22.)

Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires a court, prior to sentencing a defendant, to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]" In *United States v. Adams*, on which Carrion–Brito predominately relies, we vacated the defendant's sentence and remanded for resentencing because the district court failed to comply with that rule.[7] 252 F.3d 276, 277 (3d Cir.2001). The district court in that case asked defense counsel whether his client sought to allocute, and the court

6. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Carrion–Brito filed his appeal on February 25, 2008, even though the District Court did not enter judgment on the docket until March 3, 2008. Although his appeal was premature, we have jurisdiction because the appeal ripened upon the District Court's entry of judgment. *See* FED. R. APP. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order-but before the entry of the judgment or

order-is treated as filed on the date of and after the entry."); *see also United States v. Console*, 13 F.3d 641, 649 n. 3 (3d Cir.1993) ("[Defendant] appealed on the day of the sentencing but before the judgment was entered. We nevertheless have jurisdiction.").

7. At the time *Adams* was decided, the requirements of Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) were located at Federal Rule of Criminal Procedure 32(c)(3)(A).

accepted counsel's reply in the negative, without ever personally addressing the defendant. *Id.* at 278. We concluded that the district court erred because the court's "query, directed towards counsel, does not satisfy the requirement that the district court personally address the defendant himself." *Id.* at 279.

In the present case, unlike *Adams,* the District Court personally addressed the defendant, specifically informed him of his right to share with the Court any information concerning his belief as to the appropriate sentence, and afforded him an opportunity to present such information. That is all that Rule 32 requires. Indeed, Carrion–Brito took the opportunity to reiterate his counsel's discussion of the alleged representation made to him by a policeman, intimating that he wanted the Court to consider that information when sentencing him. The District Court then engaged the defendant in conversation on that issue, clarifying that he still sought to plead guilty and that he understood that the Court was not bound by any alleged misstatement. The Court's subsequent follow-up question to Carrion–Brito was evidently an attempt by the Court to be comprehensive, and we do not find any error in the proceedings merely because Carrion–Brito allowed his lawyer to answer the question. In sum, the District Court had already afforded Carrion–Brito the right of allocution by personally addressing him and allowing him to speak on his own behalf concerning his sentence.[8]

B. *The District Court Did Not Commit Plain Error in Imposing a Fine*

■ Carrion–Brito also argues that the "district court committed plain error be-

cause it did not make any specific findings as to the defendant's ability to pay the $3,000 [fine]; rather, the court's only finding was that the defendant could pay a fine 'below the guideline range.'" (Appellant's Op. Br. at 85 (quoting App. at 112a).)

Section 5E1.2 of the United States Sentencing Guidelines requires a court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (2007). A sentencing court must consider several factors in determining the amount of any such fine, among them, "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." *Id.* § 5E1.2(d); *see also* 18 U.S.C. § 3572(a); *Torres,* 209 F.3d at 313. The defendant bears the burden of establishing that he or she is incapable of paying a fine. *Torres,* 209 F.3d at 312. A district court is required to make findings "regarding a defendant's ability to pay a fine or … a factual record [must] be created such that it can be said that the Court considered the issue." *Id.* at 313. The "requirement of specific findings will be satisfied if the District Court adopts a PSR which contains adequate factual findings with reference to an ability to pay such that there can be effective appellate review." *Id.*

The PSR notes that Carrion–Brito had been employed sporadically in jobs that paid from $8.00 an hour to $13.50 an hour. As to Carrion–Brito's ability to pay a fine, the PSR indicated that he has no assets or

---

**8.** Because we conclude that Carrion–Brito was not deprived of his right to allocute, we need not address the issue raised by Carrion–Brito concerning the letter given to the Court by defense counsel at sentencing, namely whether, "[a]ssuming that the letter could be

the functional equivalent of allocution … [,] is there anything in the record which shows that the court had read the letter by the time it imposed sentence?" (Appellant's Op. Br. at 22.)

debts, no credit history, no income or living expenses, that he did not file tax returns for the years 2003 through 2006, and that, pursuant to his plea to count two of the superseding information, he agreed to the forfeiture of three vehicles and some cash that had been seized in connection with the investigation. The PSR further states that "[a]lthough the defendant may not be able to pay a fine immediately, it is believed that through the Inmate Financial Responsibility Program, he can pay a fine below the guideline range in installments." (PSR at 15, ¶ 70.) Carrion–Brito did not object to those aspects of the PSR.

The District Court ordered Carrion–Brito to pay a fine of $3,000 on count one of the superseding information, based on its "find[ing] that the defendant has the ability to pay a fine below the guideline range." (App. at 112a–13a.) However, the Court found that Carrion–Brito did not have the ability to pay interest. The Court ordered that the fine and special assessments be paid within three years of Carrion–Brito's release from custody.

Even assuming that the District Court erred in imposing a $3,000 fine without expressly adopting the PSR or otherwise stating a basis for its finding,[9] such error did not affect Carrion–Brito's substantial rights because the PSR supports his ability to pay a below-Guidelines fine through the Inmate Financial Responsibility Program and through gainful employment after his release. See Torres, 209 F.3d at 313 ("[W]here ... a defendant, whose burden it was to prove his or her inability to pay by a preponderance of the evidence, made utterly no showing in that regard and took no issue with facts of record showing an ability to pay, error sufficient to warrant relief must be very plain, indeed."). Carrion–Brito never objected to

those aspects of the PSR. Indeed, he did not argue before the District Court, and he does not now argue on appeal, that he is incapable of paying the $3,000 fine. Accordingly, there is no basis for concluding that his substantial rights have been affected or that a miscarriage of justice would result if we permit the fine to stand. See United States v. Demes, 941 F.2d 220, 224 (3d Cir.1991) ("We recognize that a court's omission of a conclusion as to a defendant's ability to pay a fine might be harmless if it is clear that the defendant did have the ability to pay the fine imposed.").

### C. Other Issues

Carrion–Brito asserts five additional issues on appeal: (1) whether there exists a factual basis for his conviction for aggravated identity theft; (2) whether the District Court erred in failing to consider the law enforcement officer's prediction as to his likely sentence; (3) whether the District Court erred in failing to consider the disparity between his sentence and those of his co-defendants; (4) whether the District Court erred in failing to meaningfully consider the § 3553(a) factors; and (5) whether the District Court erred by sentencing him at the top of the Guidelines range. Defense counsel, in his thorough discussion of those issues, has presented them in the style of an Anders brief, explaining why the arguments are frivolous but indicating that he has raised them at his client's insistence. Accordingly, we will review the remaining issues as we would an Anders brief, asking whether counsel has thoroughly examined the record for appealable issues and has explained why any such issues are frivolous, and whether an independent review of the record presents any non-frivolous issues.

---

9. Given our disposition of this issue, we need not determine whether there was error, but we note our skepticism at the claim that there was.

*See United States v. Youla,* 241 F.3d 296, 300 (3d Cir.2001).

The record establishes that the District Court complied with proper sentencing procedure under *United States v. Gunter,* 462 F.3d 237, 247 (3d Cir.2006), and imposed a reasonable sentence. Additionally, the record establishes that a factual basis exists for Carrion–Brito's aggravated identity theft conviction, namely he purchased the name Jose Miguel Casas–Velilla from Mr. Casas–Velilla for $200 and used the name to obtain a passport. *See Flores–Figueroa v. United States,* —— U.S. ——, 129 S.Ct. 1886, 1888, 173 L.Ed.2d 853 (2009) (holding that conviction for aggravated identity theft requires finding "that the defendant knew that the means of identification he or she unlawfully transferred, possessed, or used, in fact, belonged to another person" (internal quotations omitted)); *United States v. Cefaratti,* 221 F.3d 502, 509 (3d Cir.2000) (explaining that a court may ascertain the factual basis for a plea "by looking to the defendant's own admissions, the government's proffer of evidence, the presentence report, or whatever means is appropriate in a specific case-so long as the factual basis is put on the record." (internal quotations omitted)). In short, Carrion–Brito's remaining arguments are indeed frivolous, as his able counsel has rightly acknowledged.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed on Carrion–Brito by the District Court.